JAMES C. POTEPAN (SBN 107370)
jpotepan@leclairryan.com
BRIAN C. VANDERHOOF (SBN 248511)
bvanderhoof@leclairryan.com
LeClairRyan LLP
725 S. Figueroa Street, Suite 350
Los Angeles, CA  90017
Telephone:  (213) 488-0503
Facsimile:   (213) 624-3755

Attorneys for Defendants,
Gabriels Technology Solutions, Inc.
and Michael Gabriel

.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVOX PRODUCTION, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>GABRIELS TECHNOLOGY SOLUTIONS, INC. a New York Corporation, MICHAEL GABRIEL, an Individual, and DOES 1 through 10, Inclusive,<br><br>Defendants. | Case No.:  CV13-00846 CJC (RZx)<br><br>Judge:  Hon. Cormac J. Carney<br><br>**MEMORANDUM OF CONTENTIONS OF FACT AND LAW BY DEFENDANTS GABRIELS TECHNOLOGY SOLUTIONS, INC. AND MICHAEL GABRIEL**<br><br>**DATE:**        **April 2, 2014**<br>**TIME:**        **3:00 p.m.**<br>**PLACE:**      **Courtroom 9B**<br><br>Complaint Filed:  02/06/13<br>Trial Date:          04/15/14 |

Defendants Gabriels Technology Solutions, Inc. and Michael Gabriel

(collectively "Gabriels") submit the following Memorandum of Contentions of Fact

and Law pursuant to Central District Local Rule 16-4.

**MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

# Table of Contents

**Page**

**I.  CLAIMS AND DEFENSES (L.R. 16-4.1)** ...................................................**2**

  **A.  Summary of the Claims Plaintiff Evox Productions, LLC Has Pleaded and Plans to Pursue** ...............................................**2**

  **B.  The Elements Required to Establish the Claims by Evox**...........**2**

    **1.  Copyright Infringement** .................................................**2**

    **2.  Contributory Copyright Infringement** .........................**3**

    **3.  Federal Trademark Infringement** ................................**3**

    **4.  Federal False Advertising and Unfair Competition (§1125)** ..................**4**

    **5.  Contributory Lanham Act Violations (§1125)**.............**5**

  **C.  Brief Description of the Key Evidence in Opposition to each of the Claims by Evox** ...........................................**6**

    **1.  Copyright Infringement** .................................................**6**

    **2.  Contributory Copyright Infringement** .........................**6**

    **3.  Federal Trademark Infringement**................................**6**

    **4.  Federal False Advertising and Unfair Competition (§1125)** ..................**7**

    **5.  Contributory Lanham Act Violations (§1125)**.............**7**

  **D.  Summary of the Affirmative Defenses Gabriels Has Pleaded and Plans to Pursue**.........................................**7**

  **E.  The Elements Required to Establish the Affirmative Defenses by Gabriels** ...............................................**8**

    **1.  Laches**...........................................................................**8**

    **2.  Innocent Intent** ...........................................................**8**

    **3.  Nominative Fair Use** ...................................................**8**

    **4.  Privilege for Collective Works Under 17 U.S.C. § 201(c)** ......................**9**

MEMORANDUM OF CONTENTIONS OF FACT AND LAW

**F.    Brief Description of the Key Evidence Relied on in Support of Each Affirmative Defense** ................................................................ **9**

    **1.    Laches** ........................................................................................ **9**

    **2.    Innocent Intent** ...................................................................... **10**

    **3.    Nominative Fair Use** ............................................................. **10**

    **4.    Privilege for Collective Works Under 17 U.S.C. § 201(c)** ..... **10**

**G.    Similar Statements for All Third Parties** ...................................... **11**

**H.    Identification of any Anticipated Evidentiary Issues** ................... **11**

**I.    Identification of Any Issues of Law** ............................................... **11**

    **1.    What Constitutes Display of an Image for the Purpose of Establishing Copyright Infringement Liability?** ..................... **11**

    **2.    How Many Statutory Damages Awards Are Available to Evox?** ........ **13**

        **a.    The Evox Automotive Images Are Compilations And Therefore Warrant (At Most) Roughly 1,300 Statutory Damages Awards** ...... **13**

        **b.    Plaintiff's Copyrighted Photographs Do Not Qualify As Separate Works Entitled to Separate Awards of Statutory Damages** ............................................................................ **17**

    **3.    Does the Court or Jury Decide the Number and Amount of Statutory Damages?** ............................................................. **18**

**MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

# Table of Authorities

**Page(s)**

## Cases

*A & M Records, Inc. v. Napster, Inc.*
(9th Cir. 2001) 239 F.3d 1004....................................................................... 2

*Columbia Pictures Indus. v. Krypton Broad. of Birmingham, Inc.*
(9th Cir. 2001) 259 F.3d 1186..................................................................... 17

*Cook, Perkiss, and Liehe, Inc. v. N. Cal. Collection Serv.*
(9th Cir.1990) 911 F.2d 242........................................................................ 5

*Couveau v. Am. Airlines, Inc.*
(9th Cir.2000) 218 F.3d 1078....................................................................... 8

*Evergreen Safety Council v. RSA Network Inc.*
(9th Cir. 2012) 697 F.3d 1221..................................................................... 8

*Feltner v. Columbia Pictures Television, Inc.*
(1998) 523 U.S. 340 ................................................................................. 18

*MAI Sys. Corp. v. Peak Computer, Inc.*
(9th Cir.1993) 991 F.2d 511.................................................................. 3, 12

*New West Corp. v. NYM Co. of California, Inc.*
(9th Cir. 1997) 595 F.2d 1194.................................................................... 4

*Perfect 10, Inc. v. Amazon.com, Inc.*
(9th Cir. 2007) 508 F.3d 1146............................................................ 2, 3, 12

*Playboy Enterprises, Inc. v. Sanfilippo*
(S.D. Cal. 1998) 1998 U.S. Dist. LEXIS 5125 .................................... 17

*Religious Tech. Center v. Lerma*
(E.D. Va. 1996) 1996 U.S. Dist. LEXIS 15454 .................................. 15

*Rice v. Fox Broadcasting Co.*
(9th Cir. 2003) 330 F.3d 1170.................................................................... 5

- iii -

*Schiffer Publishing*
(D. Penn. 2005) 2005 U.S. Dist. LEXIS 416, *2 .................................... 15

*Southern Bell Te. & Tel. v. Assoc. Tel. Directory Publishers*
(11th Cir. 1985) 756 F. 2d 801 .............................................................. 14

*Stokes Seeds Ltd. v. Geo. W. Park Seed Co., Inc.*
(W.D. N.Y. 1991) 783 F. Supp. 104 .............................................. 14, 16

*Tang v. Putruss*
(E.D. Mich. 2007) 521 F. Supp. 2d 600 ................................................ 17

*Walt Disney Co. v. Powell*
(D.C. Cir. 1990) 283 897 F.2d 565 ........................................................ 17

*Xoom, Inc. v. Imageline, Inc.*
(4th Cir. 2002) 323 F. 3d 279 ................................................................ 15

**STATUTES**

15 U.S.C. §1125 ........................................................................... 4, 5, 7

17 U.S.C. §101 ................................................................ 2, 8, 12, 14

17 U.S.C. §106 ..................................................................... 2, 12

17 U.S.C. §201 ................................................................. 7, 8, 10

17 U.S.C. §408 ............................................................................ 14

17 U.S.C. §504 ....................................................................... 16, 18

**MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

I. **CLAIMS AND DEFENSES (L.R. 16-4.1)**

    A. **Summary of the Claims Plaintiff Evox Productions, LLC Has Pleaded and Plans to Pursue**

In its First Amended Complaint (Dkt. No. 18), plaintiff Evox Productions, LLC ("Evox") asserted the following five claims against Gabriels:

    Claim 1:    Copyright Infringement

    Claim 2:    Contributory Copyright Infringement

    Claim 3:    Federal Trademark Infringement

    Claim 4:    Federal False Advertising and Unfair Competition (§1125)

    Claim 5:    Contributory Lanham Act Violations (§1125)

    B. **The Elements Required to Establish the Claims by Evox**

        1. **Copyright Infringement**

The first claim asserted against Gabriels is for copyright infringement. To prevail on its claim for copyright infringement against Gabriels, Evox must prove by a preponderance of the evidence the following elements:

        1.    that Evox is the owner of a valid copyright in each of the allegedly infringed photographs; and

        2.    that Gabriels violated the exclusive right of Evox to display the copyrighted works (photographs) publicly.

*Perfect 10, Inc. v. Amazon.com, Inc*. 508 F.3d 1146, 1159 (9th Cir. 2007); *A & M Records, Inc. v. Napster, Inc*., 239 F.3d 1004, 1013 (9th Cir. 2001); 17 U.S.C. §106(5).

The Copyright Act defines "copies" as "material objects, other than phonorecords, in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 101. "A photographic image is a work that is 'fixed in a tangible medium of expression,' for purposes of the Copyright Act, when embodied (i.e., stored) in a

computer's server (or hard disk, or other storage device). The image stored in the computer is the 'copy' of the work for purposes of copyright law. *Perfect 10, Inc. v. Amazon.com, Inc*., 508 F.3d 1146, 1160 (9th Cir. 2007); citing *MAI Sys. Corp. v. Peak Computer, Inc*., 991 F.2d 511, 517–18 (9th Cir.1993). "The computer owner shows a copy 'by means of a ... device or process' when the owner uses the computer to fill the computer screen with the photographic image stored on that computer, or by communicating the stored image electronically to another person's computer." *Id*. The Ninth Circuit has labeled this standard the "server test." *Id*. at 1159.

Under the server test, "a computer owner that stores an image as electronic information and serves that electronic information directly to the user ('*i.e.*, physically sending ones and zeroes over the [I]nternet to the user's browser,' ... ) is displaying the electronic information in violation of a copyright holder's exclusive display right." *Id*. Thus, the test is whether the computer at issue stores the data and serves it to users. *Id*.

## 2. Contributory Copyright Infringement

Evox asserted its second claim against Gabriels for contributory copyright infringement. To prove contributory copyright infringement, Evox must prove both of the following elements by a preponderance of the evidence:

1. the Gabriels knew or had reason to known of the infringing activity of another; and

2. Gabriels intentionally and materially contributed to the infringing activity of another.

Ninth Circuit Model Jury Inst. No. 17.21.

## 3. Federal Trademark Infringement

The third claim asserted against Gabriels is for infringement of the trademarks "Evox" and "Evox Images" allegedly used in connection with Gabriels' automotive web portal. To prevail on its claim for trademark infringement against

1  Gabriels, Evox has the burden of proving each of the following elements by a
2  preponderance of the evidence:

3           1.     that "Evox" and "Evox Images" are valid protectable
4                trademarks;

5           2.     that Evox owns "Evox" and "Evox Images" as  trademarks; and

6           3.     that Gabriels used a mark similar to "Evox" or "Evox Images"
7                without the consent of Evox in a manner that is likely to cause
8                confusion among ordinary consumers as to the source,
9                sponsorship, affiliation or approval of the goods.

10  Ninth Circuit Model Jury Inst. No. 15.5.

11      **4.**   **Federal False Advertising and Unfair Competition (§1125)**

12      Claim number four asserted by Evox against Gabriels is for "federal false
13  advertising and unfair competition."  Evox alleges that the conduct described in
14  claim four constitutes "false designation of origin, false description of goods, false
15  advertising and unfair competition."  (DKT No. 18, FAC, P. 10, ¶ 66.)  With the
16  exception of "false advertising," the law does not distinguish between this claim
17  and the third claim for trademark infringement.  "[T]he ultimate test is whether the
18  public is likely to be deceived or confused by the similarity of the marks.... Whether
19  we call the violation infringement, unfair competition or false designation of origin,
20  the test is identical–is there a 'likelihood of confusion?'"  *New West Corp. v. NYM*
21  *Co. of California, Inc*., 595 F.2d 1194, 1201 (9th Cir. 1997).  Accordingly, the
22  fourth claim by Evox against Gabriels can only be construed as one solely for false
23  advertising under the Lanham Act (15 U.S.C. § 1125(a)).

24      In order to prove its claim for false advertising under the Lanham Act, 15
25  U.S.C. § 1125(a)(1)(B), Evox must establish by a preponderance of the evidence
26  the following elements:

27           1.     in advertisements, Gabriels made false statements of fact about
28                its own or another's product;

- 4 -

1       2.    those advertisements actually deceived or have the tendency to

2           deceive a substantial segment of their audience;

3       3.    such deception is material, in that it is likely to influence the

4           purchasing decision;

5       4.    Gabriels caused its falsely advertised goods to enter interstate

6           commerce; and

7       5.    Evox has been or is likely to be injured as the result of the

8           foregoing either by direct diversion of sales from itself to

9           Gabriels, or by lessening of the goodwill which its products

10          enjoy with the buying public.

11 *Rice v. Fox Broadcasting Co.* 330 F.3d 1170, 1180 (9th Cir. 2003); *citing*

12 *Cook, Perkiss, and Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 244 (9th

13 Cir.1990) (per curiam) (citation omitted).

14         **5.**     **Contributory Lanham Act Violations (§1125)**

15       The fifth and final claim asserted by Evox against Gabriels is for derivative

16 liability under the Lanham Act.  To prevail on its claim for contributory Lanham

17 Act violation, Evox must prove by a preponderance of the evidence each of the

18 following elements:

19       1.    that Gabriels supplied goods or services to the direct infringer;

20       2.    that the direct infringer used the goods or services that Gabriels

21           supplied to infringe the trademarks of Evox;

22       3.    that Gabriels knew or should have known that the direct

23           infringer would use the goods or services to infringe the

24           trademarks of Evox; and

25       4.    Evox was damaged by the infringement.

26 Ninth Circuit Model Jury Inst. No. 15.19.

27 / / /

28 / / /

**MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

### C.  Brief Description of the Key Evidence in Opposition to each of the Claims by Evox

#### 1.  Copyright Infringement

Gabriels stopped serving or otherwise using the Evox automotive images prior to the expiration of the license that permitted Gabriels to do so.  Witnesses for Gabriels have and will testify that the company built and maintained a web portal that powered (hosted) the classified sections of online newspapers such as the New York Times.  One aspect of the service provided by Gabriels was to serve images of particular automobiles along with other vehicle information through its portal.  Prior to April 1, 2010 Gabriels sourced its automotive images from Evox through a license agreement.  On or before April 1, 2010, the Evox automotive images were replaced with automotive images from another source pursuant to a new license agreement.  The replacement of images involved significant changes by Gabriels to the hosting software implemented on Gabriels web servers.  Gabriels also took action to sever the public path so that the public could not access the subject images.

#### 2.  Contributory Copyright Infringement

As indicated above, Gabriels stopped providing the Evox automotive images to its "media clients" prior to the expiration of the Evox license.

#### 3.  Federal Trademark Infringement

Even if the trier of fact were to assume that Gabriels displayed the Evox images after the license to do so expired, there is no evidence that Gabriels used the marks "Evox" or "Evox Images" in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation or approval of its products or services.  Gabriels did not hold itself out as "Evox" and did not market its web hosting services as those of Evox.  There is no evidence to suggest otherwise.  This particularly true given that in 2010 Gabriels did not even identify itself as the company that hosted the websites of its media partners.

### 4.     Federal False Advertising and Unfair Competition (§1125)

There is no evidence to suggest that Gabriels made false statements of fact about its own services or the Evox automotive images.  Evidence will further show that there was no business reason for Gabriels to make any statements about the Evox automotive images because the two companies do not compete.  Evox is engaged in the business of licensing photographs of automobiles.  Gabriels builds and hosts media platforms.

### 5.     Contributory Lanham Act Violations (§1125)

Evox has not identified the "direct infringer" that it will use in an attempt to attach contributory liability to Gabriels.  Assuming, however, that Evox identifies one of Gabriels' media partners as the direct infringer, evidence will show that the media partners did not use the Evox marks in a manner likely to cause confusion. All of Gabriels' media partners displayed the Evox automotive images that contained the Evox marks on the classified pages of their websites solely to display the vehicles that an end user might be researching.  There is no evidence that Gabriels' media partners used the Evox automotive images to infringe the Evox trademarks.

### D.     <u>Summary of the Affirmative Defenses Gabriels Has Pleaded and Plans to Pursue</u>

In their Answer to the First Amended Complaint (Dkt. No. 19), Gabriels asserted the following affirmative defenses that they presently intend to pursue:

Affirmative Defense 2:    Laches

Affirmative Defense 7:    Innocent Intent

Affirmative Defense 11:  Nominative Fair Use

In addition, Gabriels asserts the privilege for collective works and compilations set for in 17 U.S.C. § 201(c).

/ / /

/ / /

**E.     The Elements Required to Establish the Affirmative Defenses by Gabriels**

**1.     Laches**

Gabriels intends to pursue its affirmative defense of laches.  To prevail on a laches defense, Gabriels must prove by a preponderance of the evidence the following elements:

      1.     an unreasonable delay by Evox in bringing the action; and

      2.     prejudice to Gabriels.

*Evergreen Safety Council v. RSA Network Inc*., 697 F.3d 1221, 1226 (9th Cir. 2012); *citing Couveau v. Am. Airlines, Inc*., 218 F.3d 1078, 1083 (9th Cir.2000).

**2.     Innocent Intent**

Gabriels intends to pursue its affirmative defense of innocent intent.  Any infringement proven by Evox will be considered innocent when Gabriels proves both of the following elements by a preponderance of the evidence:

      1.     Gabriels was not aware that its acts constituted infringement of the copyright; and

      2.     Gabriels had no reason to believe that its acts constituted an infringement of the copyright.

Ninth Circuit Model Jury Inst. No. 17.26.

**3.     Nominative Fair Use**

Gabriels intends to pursue its affirmative defense of nominative fair use with respect to the Lanham Act claims.  To prevail on the defense of nominative fair use, Gabriels must prove by a preponderance of the evidence the following elements:

      1.     Gabriels used the mark in connection with the Evox automotive images, which was not readily identifiable without use of the Evox marks;

      2.     Gabriels used only so much of the Evox marks as were reasonably necessary to identify the products in question; and

- 8 -

3. Gabriels did not do anything that would in connection with the Evox trademarks suggest sponsorship or endorsement of the Gabriels' product or service by Evox.

Ninth Circuit Model Jury Inst. No. 15.23.

### 4. Privilege for Collective Works Under 17 U.S.C. § 201(c)

Gabriels intends to pursue its privilege(s) under 17 U.S.C. § 201(c). To prevail on the defense of privilege under 17 U.S.C. § 201(c), Gabriels must prove by a preponderance of the evidence the following elements:

1. Gabriels owns a copyright to a collective work under 17 U.S.C.§ 101;

2. The copyrighted images at issue in this litigation are a contribution to said collective work;

3. Gabriels did nothing more than reproduce, distribute, or revise said collective work.

*See* Ninth Circuit Model Jury Inst. No. 17.8

### F. Brief Description of the Key Evidence Relied on in Support of Each Affirmative Defense

#### 1. Laches

Evidence will establish that Evox was aware of the alleged infringement at least as early as October of 2010 and likely aware of the alleged infringement as early as April of 2010. Evox did not file its complaint until February, 2013. In the ordinary course of its business, Gabriels maintains the contents of its log files for approximately 90 days. Exculpatory evidence was maintained in Gabriels' log files, but lost because Evox waited approximately three years to file its complaint. Moreover, in late 2012 and into early 2013, Gabriels lost its lease at the facility where it stored the servers used to maintain the automotive web portal which caused Gabriels to move to a new storage facility. The move caused Gabriels lose valuable exculpatory data because servers were repurposed, reformatted and

- 9 -

1   otherwise disposed of during the transition.

2          **2.**    **Innocent Intent**

3        Gabriels stopped serving or otherwise using the Evox automotive images

4   prior to the expiration of the license that permitted Gabriels to do so.  Witnesses for

5   Gabriels have and will testify that the company built and maintained a web portal

6   that powered (hosted) the classified sections of online newspapers such as the New

7   York Times.  One aspect of the service provided by Gabriels was to serve images of

8   particular automobiles along with other vehicle information through its portal.

9   Prior to April 1, 2010 Gabriels sourced its automotive images from Evox through a

10  license agreement.  On or before April 1, 2010, the Evox automotive images were

11  replaced with automotive images from another source pursuant to a new license

12  agreement.  The replacement of images involved significant changes by Gabriels to

13  the hosting software implemented on Gabriels web servers.  Because of the changes

14  that were made to the hosting software, Gabriels had no reason to believe that the

15  Evox automotive images were available to the public after the April 1, 2010

16  expiration of the license agreement.

17         **3.**    **Nominative Fair Use**

18       The Evox automotive images each contained a watermark that displayed the

19  Evox mark(s).  Gabriels displayed the images in the form in which they were

20  provided which did not allow the marks to be removed from the image.  The Evox

21  automotive images were only displayed through the classified pages of Gabriels

22  media clients and did not infer any connection between Evox on the one hand, and

23  Gabriels or its media clients on the other hand.

24         **4.**    **Privilege for Collective Works Under 17 U.S.C. § 201(c)**

25       Gabriels' created a collective work under 17 U.S.C. §§  101 and 201(c).

26  Gabriels is the author of said collective work.  The copyrighted images at issue in

27  this lawsuit were mere contributions to said collective work.  At most, Gabriels

28  merely reproduced, distributed, or revised said collective work.

### G.      Similar Statements for All Third Parties

There are no claims raised by third parties.

### H.      Identification of any Anticipated Evidentiary Issues

Gabriels filed motions in limine to exclude the following evidence:

1.      Portions of the testimony of Susan Spielman insofar as it is based on evidence of the web crawl performed by Tennyson Maxwell ("the Tenmax report") and/or the Wayback machine (web.arcive.org/web);

2.      Evidence, argument and reference to the Tenmax report;

3.      Evidence, argument and reference to any web pages viewed through the Wayback machine; and

4.      Spreadsheets, documents, testimony, and other evidence regarding the amount of money Evox "should" have been paid under the licensing agreements between Evox and Chrome Systems Corporation.

The parties positions with respect to these issues are partially briefed at this time with complete briefing anticipated to be filed on or before March 24, 2014.

The only remaining anticipated evidentiary issues are the usual issues concerning foundation and authentication of documents, hearsay, and relevance. The parties are continuing to meet and confer on these issues.

### I.      Identification of Any Issues of Law

There are several critical legal issues that remain unanswered, many of which are novel questions of law in the Ninth Circuit.

### 1.      What Constitutes Display of an Image for the Purpose of Establishing Copyright Infringement Liability?

As is true in any copyright infringement matter, to prevail Evox must show that Gabriels violated one of the exclusive rights bestowed upon Evox by virtue of the Copyright Act.  At issue is whether Gabriels (1) reproduced the copyrighted images in copies, (2) distributed the images of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending, or (3)

- 11 -

1    displayed the copyrighted images publicly.  17 U.S.C. § 106 (1), (3), (5).

2        The Copyright Act defines "copies" as "material objects, other than

3    phonorecords, in which a work is fixed by any method now known or later

4    developed, and from which the work can be perceived, reproduced, or otherwise

5    communicated, either directly or with the aid of a machine or device." 17 U.S.C. §

6    101. "A photographic image is a work that is 'fixed in a tangible medium of

7    expression,' for purposes of the Copyright Act, when embodied (i.e., stored) in a

8    computer's server (or hard disk, or other storage device). The image stored in the

9    computer is the 'copy' of the work for purposes of copyright law.  *Perfect 10, Inc.*

10   *v. Amazon.com, Inc.*, 508 F.3d 1146, 1160 (9th Cir. 2007); citing  *MAI Sys. Corp. v.*

11   *Peak Computer, Inc*., 991 F.2d 511, 517–18 (9th Cir.1993).  "The computer owner

12   shows a copy 'by means of a ... device or process' when the owner uses the

13   computer to fill the computer screen with the photographic image stored on that

14   computer, or by communicating the stored image electronically to another persons

15   computer." *Id.*  The Ninth Circuit has labeled this standard the "server test." *Id.* at

16   1159.

17       Under the server test, "a computer owner that stores an image as electronic

18   information and serves that electronic information directly to the user ('i.e.,

19   physically sending ones and zeroes over the [I]nternet to the user's browser,' ... ) is

20   displaying the electronic information in violation of a copyright holder's exclusive

21   display right." *Id.* Thus, the test is whether the computer at issue *stores* the data <u>and</u>

22   *serves* it to users. *Id.*

23       Based on these standards, evidence will show that there should be no

24   question that Gabriels "copied" plaintiff's automotive images when it saved those

25   images to the Gabriels servers.  Gabriels' witnesses will testify that Gabriels

26   received the copyrighted images via email, DVD or on a thumb drive either

27   annually or quarterly and transferred the images to the Gabriels servers for future

28   use.  However, Gabriels made the copies during the period of its license agreement.

1   Thus, the copies made by Gabriels were permissible because Gabriels paid, in the
2   form of a license, for the right to make those copies.  With regard to distribution
3   and display, Gabriels stopped *serving* the images to users when it stopped making
4   the images publicly available by altering its web hosting software prior to the
5   expiration of the license to use the images.

6            **2.    How Many Statutory Damages Awards Are Available to**
7                    **Evox?**

8            Aside from liability, the most important issue to be determined is the number
9    of statutory damages awards Evox will be entitled to should it prevail.  This issue is
10   likely to be raised because Evox has formally elected to recover statutory damages
11   as its sole remedy for copyright infringement and recently indicated in its Motion in
12   Limine No. 2 that it is not seeking to recover actual damages on the trademark
13   claims.  Evox contends that it is entitled 108,000 separate awards or, stated
14   differently, one award for each of its automotive images that was infringed.
15   Gabriels, on the other hand, contends that Evox should recover at most
16   approximately 1,300 separate awards, or one award for each copyright registration
17   that Evox can prove was infringed.

18           **a.    The Evox Automotive Images Are Compilations And**
19                   **Therefore Warrant (At Most) Roughly 1,300 Statutory**
20                   **Damages Awards**

21           As indicated, Plaintiff has elected statutory damages as its only recoverable
22   damages measure under the Copyright Act ("the Act") and that it is entitled to
23   108,000 separate awards.  The law, however, does not comport with Plaintiff's
24   interpretation of the Act.

25           Section 103(a) of the Act provides that the subject matter of copyright, as
26   specified in Section 102, includes compilations. A compilation is defined as:

27               A work formed by the collection and assembling of
28               preexisting materials or of data that are selected,

- 13 -

**MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

1    coordinated, or arranged in such a way that the resulting

2    work as a whole constitutes an original work of

3    authorship.

4  17 U.S.C. § 101.

5        Catalogs constitute "compilations" as that term is defined in the Act. *Id*.; *see*

6  *Southern Bell Te. & Tel. v. Assoc. Tel. Directory Publishers*, 756 F. 2d 801 (11th

7  Cir. 1985). Compilations constitute a single work for purposes of awarding

8  statutory damages.  At issue in this case are 108,000 automotive images registered

9  under roughly 1,300 copyright registrations. If successful in proving infringement,

10  Evox, at most, should be entitled to 1,300 separate awards of statutory damages

11  because the Evox automotive images do not constitute separate "works."

12        For each of the 1,300 registrations at issue, Evox entitled the work by giving

13  it a number and identifying the year, make and model of the vehicle represented in

14  the photographs.  All of the photographs in each registration are of the same

15  vehicle.  The title of the copyright registrations alone are indicative of the fact that

16  the images were not meant to stand alone, but rather to be included in a greater

17  whole, the Evox image library.

18        As expected, Evox argues that its automotive images are not compilations,

19  but separate works.  However, this argument is not entitled to any weight in light of

20  the fact that such classifications have no significance with respect to the subject

21  matter of a copyright or the exclusive rights provided by the Act.  *Stokes Seeds Ltd.*

22  *v. Geo. W. Park Seed Co., Inc.*, 783 F. Supp. 104, 107 (W.D. N.Y. 1991); 17 U.S.C.

23  § 408(c)(1). Irrespective of the classification, the Evox group registrations are

24  compilations, serving the singular purpose of registering a digital catalog of

25  automotive images, which were to appear within the Evox image library.

26        This particular issue may be one of first impression across all circuits,

27  including the Ninth.  This is likely the consequence of the Internet and its rapid

28  effect on modern business practices.  However, recent case law in related areas is

- 14 -

1  both informative and instructive on the issue.

2      In *Schiffer Pub'g, Ltd. v. Chronicle Books, LLC*, the plaintiff hired

3  photographers to create photographs of various fabric and textiles, which were

4  printed into 13 books. *Schiffer Publishing*, 2005 U.S. Dist. LEXIS 416, *2 (D.

5  Penn. 2005). The defendant later published a book containing images from

6  plaintiff's book. *Id*. at *3. Suit was subsequently filed and plaintiff sought

7  statutory damages. *Id*. at *4. The court awarded statutory damages on a per book

8  basis finding that each book was a collective work, utilizing a number of

9  independent photographs and assembling them into a collective whole. *Id*. at *7-8.

10     The Evox group registrations are collective works akin to the books

11 registered in *Schiffer Publishing*. Hundreds and thousands of independent product

12 shots were assembled into roughly 1,300 distinct, collective wholes (i.e. *volumes*)

13 for the purpose of cataloging images by year, make and model of vehicle within the

14 Evox image library.

15     In *Religious Tech. Center v. Lerma*, 1996 U.S. Dist. LEXIS 15454 (E.D. Va.

16 1996), the defendant was alleged to have copied 33 copyrighted writings and posted

17 them on the internet. *Id*. at *6. Each of the 33 writings, however, arose from five

18 different compilations. *Id*. at *39. The court held, "[i]f multiple but distinct works

19 are collected and filed together at the Copyright Office under the same registration,

20 they are to be considered a single work for the purposes of damages." *Id*. at *40.

21     In *Xoom, Inc. v. Imageline, Inc.*, 323 F. 3d 279 (4th Cir. 2002), Imageline

22 introduced a CD-Rom containing 1,580 individual electronic clip-art images, and

23 subsequently registered the bundle in its entirety with the Copyright Office. *Id*. at

24 281. There was no specific mention of the individual clip-art images. However,

25 Imageline deposited electronic copies of each clip-art image with its registration

26 application. *Id*. A second copyright was issued to Imageline for another set of

27 9,618 images. *Id*. Imageline subsequently filed suit against Xoom for infringement

28 of certain Imageline clip-art images. *Id*. In holding that Imageline was entitled to a

- 15 -

maximum of two awards of statutory damages, the court found both registrations could be classified as compilations. *Id*. at 285.

Most instructional, however, is the decision in *Stokes Seeds Limited*. Geo. W. Park Seed Co. ("Park") was one of North America's leading producers and sellers of horticultural seed and related products. *Id*. at 105. "As part of its operations, Park created a portfolio of photographs of the emerging seedlings of various plants. Park claims to have invested considerable time and energy into this undertaking and regards each such photograph as an individual work of art and separately copyrightable." *Id*. at 106. There was no dispute that wrongful copying of Park's photos occurred; the issue before the court being the number of copyrighted "works" Stokes had infringed. *Id*. On this issue, the court noted:

> However, these photographs are assembled into a collective whole in one work, Park's Success with Seeds. Park's Success with Seeds is therefore a "collective work" under the 1976 Act, and thus also necessarily a compilation. Accordingly, under 17 U.S.C. § 504(c)(1), all of the photographs appearing on the book constitute one work, justifying a single award of statutory damages.

*Id*.

The Evox image library is comparable to the paper-bound catalog of products created by Park. Here, Evox assembled its images into a collective whole and licensed the collective whole almost exclusively, similar to Park's portfolio of seed products. The bottom line is that the automotive images were shot for inclusion in the Evox image library. These facts compel a finding by this Court that Evox's approximately 1,300 group registrations are compilations of vehicle images, and therefore constitute a single work for purposes of awarding statutory damages.

/ / /

/ / /

**MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

1

          **b.**     **Plaintiff's Copyrighted Photographs Do Not Qualify**

2

                    **As Separate Works Entitled to Separate Awards of**

3

                    **Statutory Damages**

4
5
6
7
8

Aside from the above-referenced cases delineating between compilations and independent works, several courts have applied various economic tests as a guide in applying the statutory damages statute to particular facts.  Application of the facts in this case to such economic tests affirms Gabriels' position that each automotive image is not a separate "work" entitled to a separate award of statutory damages.

9
10
11
12
13
14
15
16

Although the Act does not define the term "work," every circuit to address the issue has held that "separate copyrights are not distinct works unless they can 'live their own copyright life.'" *Columbia Pictures Indus. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1193 (9th Cir. 2001) (quoting *Walt Disney Co. v. Powell*, 283 897 F.2d 565, 569 (D.C. Cir. 1990)).  Under this analysis, where separate copyrights have no economic value, regardless of their artistic value, they must be considered part of a single work. *Tang v. Putruss*, 521 F. Supp. 2d 600 (E.D. Mich. 2007).

17
18
19
20
21
22
23
24
25
26
27
28

A California District Court looked to similar approaches from various circuits. *See Playboy Enterprises, Inc. v. Sanfilippo*, 1998 U.S. Dist. LEXIS 5125 (S.D. Cal. 1998).  In *Playboy*, the court acknowledged and agreed with the First and Second Circuits' approach of looking at a copyright's "independent economic value," and whether in itself, the copyright was "viable." *Id*. at *18.  The *Playboy* court set forth certain factors to aid in determining whether individual photographs had independent economic value for purposes of calculating statutory damages.  *Id*. at *18-19.  Important to the *Playboy* court were factors such as: (1) whether each individual photo was subject to reuse and redistribution in accordance with separate licensing agreements; (2) whether each photo represented a singular and copyrightable effort concerning a particular model, photographer, and location; and (3) whether the photographs were marketed separately.  *Id*.

There is obviously a fact determinative inquiry that must be made in order to reach the conclusion.  However, evidence will show that the Evox images have little to no value outside of their inclusion in the Evox library.

**3.** **Does the Court or Jury Decide the Number and Amount of Statutory Damages?**

The United States Supreme Court has held that the Seventh Amendment provides a right to a jury trial on all issues pertinent to an award of statutory damages under § 504(c) of the Copyright Act, including the amount itself.  *Feltner v. Columbia Pictures Television, Inc*., 523 U.S. 340, 355 (1998).  While not necessarily a question of law that remains to be decided, this question was raised to alert the Court of potential issues that may be raised by the parties during their preparation of jury instructions and the verdict forms.

Dated:  March 17, 2014                     LeClairRyan


                                   By:  /s/  *Brian C. Vanderhoof*
                                       BRIAN C. VANDERHOOF
                                       Attorneys for Defendants Gabriels
                                       Technology Solutions, Inc. and
                                       Michael Gabriel

**MEMORANDUM OF CONTENTIONS OF FACT AND LAW**